UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

MERRILL LYNCH COMMERCIAL
FINANCE CORP.,

               Plaintiff,

                                                      **OPINION & ORDER**

            -against-                                     **CV-09-4721 (SJF)(ARL)**

AMERICAN STANDARD TESTING AND
CONSULTING LABORATORIES, INC.,
ALAN FORTICH, AMERICAN STANDARD
TESTING OF NEW JERSEY LLC, HERNASCO
TESTING LABORATORY, INC. and
"JOHN DOE # 1" THROUGH "JOHN DOE #12,"
the last twelve names being fictitious and unknown
to plaintiff, being persons having or claiming an
interest in or lien upon the Collateral described in
the complaint,

               Defendants.
---------------------------------------------------------X

FEUERSTEIN, J.

On November 2, 2009, plaintiff Merrill Lynch Commercial Finance Corp. ("plaintiff") filed a complaint against defendants American Standard Testing and Consulting Laboratories, Inc., Alan Fortich ("Fortich"), American Standard Testing of New Jersey LLC, Hernasco Testing Laboratory, Inc., and "John Doe #1" through "John Doe # 12" (collectively, "defendants"), pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging claims for breach of contract and for seizure and possession of certain collateral. Plaintiff simultaneously filed an order to show cause seeking the following relief: (1) an order of seizure of defendants' collateral pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 7102; and (2) an

1

order pursuant to Rule 26(d) of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 7112 permitting Fortich to be deposed regarding the location of defendants' collateral. For the reasons set forth herein, plaintiff's motion is granted.

I. Background

    A. Factual Background[1]

        1. The Parties

Plaintiff is a Delaware corporation with its principal place of business located in Chicago, Illinois, and is an assignee of the interests of Merrill Lynch Business Financial Services, Inc. ("MLBFS"). (Complaint [Compl.], ¶ 1).

Defendant American Standard Testing and Consulting Laboratories, Inc. ("ASTCL") is a New York corporation with its principal place of business located in New Hyde Park, New York. (Compl., ¶ 2; Answer [Ans.], ¶ 2). Defendant American Standard Testing of New Jersey LLC ("ASTNJ") is a New Jersey corporation with its principal place of business located in Woodbridge, New Jersey. (Compl., ¶ 4; Ans., ¶ 2). Defendant Hernasco Testing Laboratory, Inc. ("Hernasco") is a Florida corporation with its principal place of business in Hudson, Florida. (Compl., ¶ 5; Ans., ¶ 2).

Fortich is domiciled in New York and was, at all relevant times, the president of ASTCL, a member of ASTNJ and the president of Hernasco. (Affidavit of Alan Fortich in Opposition to Plaintiff's Motion [Fortich Aff.], ¶ 1).

---

[1] The factual allegations are taken from the pleadings and from the affidavits and exhibits submitted in support of, and in opposition to, plaintiff's motion.

2.  The Line of Credit Agreement

On or about September 10, 2003, ASTCL and MLBFS entered into a Working Capital Management Account ("WCMA") Loan and Security Agreement ("the Line of Credit Agreement"), pursuant to which MLBFS agreed to provide a commercial line of credit for ASTCL in an amount not to exceed seven hundred fifty thousand dollars ($750,000.00). (Compl., Ex. A). ASTCL promised to pay to MLBFS the full indebtedness under the Line of Credit Agreement by the maturity date set forth therein. (Compl., Ex. A, § 2.1). The initial maturity date of the Line of Credit Agreement was September 30, 2004. (Compl., Ex. A, § 1.1). However, the Line of Credit Agreement was amended on July 7, 2006 to, *inter alia*, extend the maturity date to April 30, 2007 and to reduce the maximum line of credit to five hundred thousand dollars ($500,000.00). (Compl., ¶ 12, Ex. D; Ans., ¶ 2). On December 10, 2008, the Line of Credit Agreement was again amended to, *inter alia*, extend the maturity date to March 31, 2009 and to further reduce the maximum line of credit as set forth therein. (Compl., Ex. E). On March 25, 2009, the maturity date under the Line of Credit Agreement was again extended to July 31, 2009. (Compl., ¶ 15, Ex. F; Ans., ¶ 2).

Section 3.2 of the Line of Credit Agreement obligated ASTCL to furnish MLBFS certain financial information, including, *inter alia*, annual financial statements, interim financial statements and Accounts Receivable ("A/R") Agings, during the term of the Line of Credit Agreement. (Compl., Ex. A). According to Fortich, ASTCL never timely provided the financial information required by the Line of Credit Agreement or the subsequent amendments thereto, other than its annual corporate financials and tax returns, nor did plaintiff demand that it to do so. (Fortich Aff., ¶¶ 3-10).

3

Section 3.4 of the Line of Credit Agreement provides, in relevant part:

> (a) Pledge of Collateral. To secure payment and performance of the Obligations, [ASTCL] hereby pledges, assigns, transfers and sets over to MLBFS, and grants to MLBFS first liens and security interests in and upon all of the Collateral[2], subject only to priorities afforded to Permitted Liens. * * *
>
> (d) Sales and Collections. [ASTCL] shall not sell, transfer or otherwise dispose of any Collateral, except that so long as no Event of Default[3] shall have occurred and be continuing, [ASTCL] may in the ordinary course of business: (i) sell any Inventory normally held by [ASTCL] for sale, (ii) use or consume any materials and supplies normally held by [ASTCL] for use or consumption; and (iii) collect all of its Accounts. * * *

(Compl., Ex. A).

Section 3.6(a) of the Line of Credit Agreement provides the remedies available to MLBFS "[u]pon the occurrence and during the continuance of any Event of Default" by ASTCL, including, *inter alia*, termination of the Line of Credit Agreement or any of the following:

> "(iii) Exercise Other Rights. MLBFS may exercise any or all of the remedies of a secured party under applicable law and in equity, including, but not limited to, the UCC, and any or all of its other rights and remedies under the Loan Documents.
>
> (iv) Possession. MLBFS may require [ASTCL] to make the Collateral and the records pertaining to the Collateral available to MLBFS at a place designated by

---

[2] "Collateral" is defined in Section 1.1 of the Line of Credit Agreement as "the WCMA Account, all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of [ASTCL], howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and Insurance proceeds), and the additional collateral described in Section 3.6(b) hereof." (Compl., Ex. A).

[3] Section 3.5 of the Line of Credit Agreement enumerates the events which constitute an "Event of Default" under the Line of Credit Agreement, including, *inter alia*, failing to pay any amount due and owing under the Line of Credit Agreement, which continues for more than five (5) business days after written notice thereof. (Compl., Ex. A).

> MLBFS which is reasonably convenient to [ASTCL], or may take possession of the Collateral and the records pertaining to the Collateral without the use of any judicial process and without any prior notice to [ASTCL].
>
> (v) Sale. MLBFS may sell any or all of the Collateral at public or private sale upon such terms and conditions as MLBFS may reasonably deem proper * * *.
>
> (vi) Delivery of Cash, Checks, Etc. MLBFS may require [ASTCL] to forthwith upon receipt, transmit and deliver to MLBFS in the form received, all cash, checks, drafts and other instruments for the payment of money * * * which may be received by [ASTCL] at any time in full or partial payment of any Collateral, and require that [ASTCL] not commingle any such items which may be so received by [ASTCL] with any other of its funds or property but instead hold them separate and apart and in trust for MLBFS until delivery is made to MLBFS.
>
> (vii) Notification of Account Debtors. MLBFS may notify any account debtor that its Account or Chattel Paper has been assigned to MLBFS and direct such account debtor to make payment directly to MLBFS of all amounts due or becoming due with respect to such Account or Chattel Paper * * *.
>
> (viii) Control of Collateral. MLBFS may otherwise take control in any lawful manner of any cash or non-cash items of payment or proceeds of Collateral and of any rejected, returned, stopped in transit of repossessed goods included in the Collateral and endorse [ASTCL's] name on any item of payment on or proceeds of the Collateral."

(Compl., Ex. A).

In addition, Section 3.6(b) provides, in relevant part:

> " Set-Off. MLBFS shall have the further right upon the occurrence and during the continuance of an Event of Default to set-off, appropriate and apply toward payment of any of the Obligations * * *, any cash, credit, deposits, accounts, financial assets, investment property, securities and any other property of Customer which is in transit to or in the possession, custody or control of MLBFS * * * or any agent, bailee, or affiliate of MLBFS * * *. [ASTCL] hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as Collateral and as additional security for the Obligations. * * *."

Contemporaneously with his execution of the Line of Credit Agreement on behalf of ASTCL, Fortich executed three (3) unconditional guaranties ("the Guaranties"), on behalf of

5

himself, as a member of ASTNJ and as president of Hernasco, guaranteeing, *inter alia*, prompt and full payment and performance of all sums due and owing from ASTCL under the Line of Credit Agreement and "of all other indebtedness, liabilities and obligations of [ASTCL] to MLBFS," "in order to induce [MLBFS] to advance moneys or extend or continue to extend credit * * * to or for the benefit of, * * * or enter into any other financial accommodations with [ASTCL] * * *" under the Agreement. (Compl., Ex. C).

On September 12, 2003, MLBFS perfected its security interest in the Collateral by filing a UCC financing statement with the New York State Secretary of State. (Compl., Ex. B; Declaration of Anne M. Easter [Easter Decl.], ¶ 4).

On December 29, 2007, MLBFS assigned its interests in the Line of Credit Agreement and the Guaranties to plaintiff. (Compl., ¶ 13; Easter Decl., ¶ 8). On January 30, 2008, MLBFS filed a UCC statement of assignment evidencing the assignment of its perfected security interest in the Collateral to plaintiff. (Compl., Ex. B; Easter Decl., ¶ 4). On March 24, 2008, plaintiff filed a UCC continuation statement which continued its security interest in the Collateral "for the additional period provided by applicable law." (Compl., Ex. B; Easter Decl., ¶ 4).

### 3. Event of Default

On August 6, 2009, plaintiff sent ASTCL and each guarantor a written notice of ASTCL's default of the Line of Credit Agreement for its failure to pay the indebtedness owed under the Line of Credit Agreement, as amended, by the maturity date, as extended. (Compl., Ex. G; Fortich Aff., ¶ 11).

Thereafter, the parties engaged in negotiations to restructure and provide for repayment of

the loan under the Line of Credit Agreement. (Reply Declaration of Anne M. Easter [Easter Reply], ¶ 3).

On or about October 5, 2009, plaintiff sent ASTCL a proposed amendment to the Line of Credit Agreement ("the October Amendment") which, *inter alia*, extended the maturity date of the Line of Credit Agreement and Guaranties to July 31, 2010, in consideration for which ASTCL was to contemporaneously pay to plaintiff a non-refundable extension fee in the amount of two thousand three hundred dollars ($2,300.00). (Fortich Aff., Ex. C). The October Amendment expressly provided that it:

> "shall become effective upon execution and delivery by [defendants] of the executed document together with the following items: 1. Fiscal year end combined compiled 12/31/08 Financial Statements, 2. Extension Fee, 3. Executed Subordination Agreement dated October 5, 2009, 4. Current Account Payable agings of [defendants], 5. Current Account A/R agings of [defendants] (including break-out of bonded A/R), and 6. Detail on timing of payments or retainage and A/R over 90 days past invoice date provided however, if the Effective Date of this Amendment has not occurred within five (5) business days from the date [of the October Amendment], then [the October] Amendment will, at the sole option of [plaintiff], be void and no effect."

(Fortich Aff., Ex. C) (emphasis in original).

Fortich avers that he executed the October Amendment and that he "had [his] office manager overnight the documents to [plaintiff]." (Fortich Aff., ¶ 14). However, plaintiff denies ever receiving the executed October Amendment. (Easter Reply, ¶ 4).[4] According to Fortich, the check remitting payment of the extension fee was "omitted from this overnight mail," but was

---

[4] Notably, defendants do not supply a receipt of mailing, nor an affidavit from Fortich's office manager averring to the mailing, notwithstanding that they filed an improper sur-reply, designated as a letter, dated December 3, 2009, which countered certain other contentions set forth in plaintiff's reply papers, including, *inter alia*, plaintiff's allegation that Fortich never signed the October Amendment.

7

subsequently sent and cashed without recourse by plaintiff on or about October 16, 2009.[5] (Id.) Ms. Easter admits that plaintiff cashed the check annexed as an exhibit to the Fortich affidavit, but contends that the funds were credited towards ASTCL's debt and were not considered the extension fee because, *inter alia*, the check was for a different amount than the extension fee, i.e., two thousand five hundred dollars ($2,500.00) instead of two thousand three hundred dollars ($2,300.00), and it was not accompanied by the executed October Amendment. (Easter Reply, ¶ 5).

Fortich also maintains that although the financial data required under the October Amendment had not been timely provided to plaintiff, he has since assembled that data and is prepared to provide it to plaintiff now. (Fortich Aff., ¶ 14). Fortich contends that "the [past] actions and communications between the parties evidence a course of conduct that has always condoned the provision of material after [the] dates [set forth in the Line of Credit Agreement and subsequent amendments thereto]." (Fortich Aff., ¶ 15).

Plaintiff contends that, in any event, defendants have "failed to comply with the most material part of the proposed [October Amendment]- i.e., the repayment schedule which required payments of $8,000 of principal plus interest each on October 31, 2009 and on November 30, 2009." (Easter Reply, ¶ 8).

On October 20, 2009, plaintiff's counsel sent ASTCL and each guarantor written notice that an Event of Default had occurred and was continuing under the Line of Credit Agreement

---

[5] Although Mr. Fortich avoids indicating exactly when the check was sent to plaintiff, the date on the check itself is October 16, 2009. Thus, the check was not merely "omitted" from the alleged overnight mailing containing the executed October Amendment, since it had not even been issued at the time of that alleged mailing.

8

and demanded payment in full of all amounts outstanding under the Line of Credit Agreement, totaling four hundred eighty-nine thousand fourteen dollars and seventy-seven cents ($489,014.77), by October 27, 2009. (Compl., Ex. H). Plaintiff alleges that defendants have failed to pay ASTCL's indebtedness under the Line of Credit Agreement and Guaranties. (Compl., ¶ 18; Easter Decl., ¶ 13). According to plaintiff, as of October 28, 2009, defendants owed it four hundred eighty-seven thousand eight hundred fifteen dollars and forty-five cents ($487,815.45) under the Line of Credit Agreement, exclusive of accruing interest, costs and attorneys' fees which are recoverable under the Line of Credit Agreement. (Compl., ¶ 21, Ex. A § 3.7; Easter Decl., ¶ 15).

Plaintiff also alleges that an Event of Default occurred under the Line of Credit Agreement based upon ASTCL's failure to provide financial reporting and to otherwise comply with its obligations under the Line of Credit Agreement. (Compl., ¶ 19).

B. Procedural Background

On November 2, 2009, plaintiff commenced this action against defendants pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging claims for breach of the Line of Credit Agreement and Guaranties and for seizure and possession of the Collateral. Plaintiff contemporaneously filed an order to show cause seeking the following relief: (1) an order of seizure of defendants' Collateral pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 7102; and (2) an order pursuant to Rule 26(d) of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 7112 permitting plaintiff to depose Fortich regarding the location of the Collateral.

## II. DISCUSSION

### A. Order of Seizure

Rule 64(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]t the commencement of and throughout any action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. * * *." Thus, Article 71 of the New York Civil Procedure Law and Rules, which governs the recovery of chattel located in New York, is applicable to this proceeding. See JP Morgan Chase Bank, N.A. v. Reijtenbagh, 615 F.Supp.2d 278, 280 (S.D.N.Y. 2009); Southland Corp. v. Froelich, 41 F.Supp.2d 227, 248 (E.D.N.Y. 1999).

N.Y. C.P.L.R. § 7101 provides that "[a]n action under this article may be brought to try the right to possession of a chattel." N.Y. C.P.L.R. § 7102 provides the procedure for obtaining an order of seizure of chattel to be used in connection with an action brought pursuant to Section 7101. Subsection (c) of Section 7102 provides, in relevant part, as follows:

> "The application for an order of seizure shall be supported by an affidavit which shall clearly identify the chattel to be seized and shall state: 1. that the plaintiff is entitled to possession by virtue of facts set forth; 2. that the chattel is wrongfully held by the defendant named; 3. whether an action to recover the chattel has been commenced, the defendants served, whether they are in default, and, if they have appeared, where papers may be served upon them; 4. the value of each chattel or class of chattels claimed, or the aggregate value of all chattels claimed; * * *; [and] 6. that no defense to the claim is known to the plaintiff; * * *."

#### 1. The Affidavit and Undertaking Requirements

In support of its application, plaintiff submits a declaration of its vice president, Anne M. Easter. (Easter Decl., ¶ 1). In her declaration, Ms. Easter indicates that plaintiff is entitled to

10

possession of the Collateral by virtue of plaintiff's perfected security interest in the Collateral and defendants' default of the Line of Credit Agreement; that defendants have not paid their indebtedness under the Line of Credit Agreement and Guaranties; that plaintiff has commenced an action to recover the Collateral, in which defendants were served and have appeared; that "[t]he precise current aggregate value of the Collateral claimed in which [plaintiff] seeks possession is unknown, however, the requirement for an undertaking has been waived by written consent of the parties in the Line of Credit Agreement * * *," (Easter Decl., ¶ 16)[6]; and that plaintiff "knows of no defense to [plaintiff's] claim" for an order of seizure. (Easter Decl., ¶ 19). Accordingly, Ms. Easter's declaration substantially complies with Section 7102(c).

Defendants' contention that Ms. Easter's declaration is insufficient because it fails to set forth the value of the Collateral plaintiff seeks to seize does not defeat plaintiff's application for an order of seizure under the circumstances of this case. Where the plaintiff's purpose in recovering the property "is not possession of the property for its own sake, but the retention of security for a debt," Christies, Inc. v. Davis, 247 F.Supp.2d 414, 420 (S.D.N.Y. 2002), the plaintiff need not establish the value of any of the pledged property. See, e.g. id. (finding that the plaintiff did not have to establish the value of any of the pledged property since the amount of money damages sought was the undisputed amount due on the Note, rather than the value of the collateral). Since plaintiff is seeking judgment in the certain amount of defendants' indebtedness under the Line of Credit Agreement and Guaranties, rather than on the value of the Collateral,

---

[6] Section 3.6(f) of the Line of Credit Agreement provides, in relevant part, that "[i]n the event MLBFS seeks to take possession of any or all of the Collateral by court process, [ASTCL] further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession, * * *."

11

plaintiff need not set forth the value of the chattel at this stage in order to secure an order of seizure. Moreover, it would be unreasonable to deprive plaintiff of a remedy to which it is clearly entitled merely because plaintiff is unable to ascertain the value of the collateral in defendants' possession as a result of defendants' failure to perform its obligations under the Line of Credit Agreement[7].

I also reject defendants' contention that the undertaking requirement in Section 7102 is not waivable. See, e.g. Marsh USA Inc. v. Karasaki, No. 08 Civ. 4195, 2008 WL 4778239, at * 21 (S.D.N.Y. Oct. 31, 2008) (holding that parties may agree to waive the bond requirements of Rule 65 of the Federal Rules of Civil Procedure); In re Schick, 215 B.R. 13, 17 (Bankr.S.D.N.Y. 1997) (holding that although the rule governing an order of attachment speaks in mandatory terms regarding an undertaking, the granting of an order of attachment without requiring an undertaking renders the attachment voidable, not void); Decker v. Judson, 2 E.P. Smith 439, 16 N.Y. 439 (N.Y. 1857) (holding that a defect in a replevin bond was voidable, not void, and that defendant waived any objections to the bond's validity). Since a failure to require an undertaking, or a defect in an undertaking, is voidable, it logically follows that the requirement of an undertaking in Section 7102 is waivable. Accordingly, defendants' express waiver in the Line of Credit Agreement of the requirement that plaintiff post an undertaking prior to seeking to take possession of the Collateral is valid and enforceable. Since Ms. Easter's declaration substantially complies with Section 7102(c), and defendants' waiver of the required undertaking is

---

[7] Section 3.2 of the Line of Credit Agreement obligates ASTCL to furnish plaintiff with copies of its interim financial statements for each fiscal semi-annual period during the term of the Line of Credit Agreement. Had ASTCL performed this obligation, plaintiff likely would have been able to set forth the value of the Collateral in Ms. Easter's declaration.

enforceable, plaintiff is entitled to an order of seizure if it has established a probable success on the merits of its claim for possession of the Collateral.

2. Probability of Success on the Merits

Subsection (d)(1) of Section 7102 provides, in relevant part:

> "Upon presentation of the affidavit and undertaking and upon finding that it is probable the plaintiff will succeed on the merits and the facts are as stated in the affidavit, the court may grant an order directing the sheriff of any county where the chattel is found to seize the chattel described in the affidavit * * *. The plaintiff shall have the burden of establishing the grounds for the order. * * *"

Based upon the evidence submitted in support of, and in opposition to, plaintiff's application, I find that the facts are as stated in Ms. Easter's declaration and reply declaration.

"In an action for recovery of chattels under § 7101, the sole issue is which party has the 'superior possessory right' to the chattels." Christie's Inc., 247 F.Supp.2d at 419 (quoting Honeywell Information Systems, Inc. v. Demographic Systems, Inc., 396 F.Supp. 273, 275 (S.D.N.Y. 1975)); see also Southland, 41 F.Supp.2d at 248-249; Licensing Services International v. Howe Chemical Co., Inc., No. CV-93-2556, 1995 WL 744996, at * 1 (E.D.N.Y. Dec. 6, 1995).

Since plaintiff holds a perfected security interest in the Collateral; defendants are in default of the Line of Credit Agreement and Guaranties; and the Line of Credit Agreement provides that one (1) of the remedies available to plaintiff for an Event of Default is to "take possession of the Collateral and the records pertaining to the Collateral without the use of any judicial process and without any prior notice to [ASTCL]," (Compl., Ex. A § 3.6(a)(iv)), plaintiff clearly has the "superior possessory right" to the Collateral. See N.Y. U.C.C. § 9-609(a)(1)

13

("after default, a secured party may take possession of the collateral; * * *" either with or without judicial process, if it "proceeds without breach of the peace."); see, e.g. Christie's Inc., 247 F.Supp.2d at 419 (finding that the plaintiff had the superior right to the collateral since the defendants had conceded their default and the Note provided that the plaintiff had "the immediate right to foreclose" on the pledged property); Southland, 41 F.Supp.2d at 248-249 (finding that the parties' Security Agreements provided the plaintiff with the right to possession of the defendant's inventory); Paxall Circle Machinery v. My Brands, Inc., No. 89 Civ. 3008, 1989 WL 86039, at * 4 (S.D.N.Y. July 27, 1989) (finding that the plaintiffs demonstrated a likelihood of success on the merits on their claim for possession of the property in light of evidence that the defendant had defaulted in paying the plaintiffs under the parties' agreement, which clearly gave the plaintiffs the right to possession of the property upon default); Honeywell, 396 F.Supp. at 277 (finding that the plaintiff had a right to immediate possession of the equipment since the equipment was the collateral under the agreement securing the promissory note, on which the defendant had defaulted). Accordingly, plaintiff has established its probable success on the merits of its claim to recover possession of the Collateral.

Defendants contend that they have a good faith defense to this action insofar as the October Amendment extended the maturity date of the Line of Credit Agreement through July 31, 2010. According to defendants, "the course of conduct between the parties * * * and the acceptance by [plaintiff] of the extension fee without recourse, warrants the determination that [plaintiff] can't deny the existence of the October 5, 2009 modification and extension agreement and from pursuing [sic] this action for seizure." (Fortich Aff., ¶ 15).

An application for an order of seizure "may be defeated by a showing of a good faith

defense to movant's claim." Colonial Ford, Inc. v. Ford Motor Co., No. Civ-90-1157E, 1991 WL 224358, at *1 (W.D.N.Y. Oct. 18, 1991) (quoting East Side Car Wash, Inc. v. K.R.K. Capitol, Inc., 102 A.D.2d 157, 476 N.Y.S.2d 837 (1st Dept. 1984)); see also Paxall, 1989 WL 86039, at *4 (holding that the defendant is entitled to present any good faith defense to the plaintiff's claim of a superior possessory right in the property). However, contrary to defendants' contention, defendants fail to state a valid defense to plaintiff's application for an order of seizure. The terms of the Line of Credit Agreement and its subsequent amendments, as well as the terms of the Guaranties, not the parties' past course of conduct, determine whether defendants were in default of their obligations. It is clear from the Fortich affidavit that defendants defaulted on their obligations under the Line of Credit Agreement, as amended and extended.

Moreover, defendants have not established that the October Amendment was ever consummated, since Easter expressly rebuts Fortich's statement of mailing, which is conspicuously unaccompanied by any supporting documentation of mailing, and neither party has submitted the October Amendment executed by all parties.

Even assuming, however, that the October Amendment had been executed by defendants and returned to plaintiff, it is clear from the record that defendants did not timely fulfill any of the conditions precedent to, or obligations under, the October Amendment. Both the terms of the October Amendment and the e-mail from Ms. Easter to defendants regarding the October Amendment clearly imposed upon defendants certain conditions precedent that defendants were required to fulfill within five (5) days thereof before the October Amendment became effective, none of which were timely fulfilled. Furthermore, defendants have not remitted payments to

15

plaintiff in accordance with the repayment schedule set forth in the October Amendment.[8] Accordingly, defendants have not shown a good faith defense to plaintiff's application for an order of seizure. Since plaintiff has shown a probability of success on the merits of its claim for possession of the Collateral, and defendants have not established a good faith defense to that claim, the branch of plaintiff's application seeking an order of seizure is granted.

B. Deposition of Fortich

Plaintiff seeks a deposition of Fortich "for the purpose of determining the complete whereabouts of the Collateral, * * *, as well as a list of account debtors which plaintiff is entitled to contact." (Easter Decl., ¶ 17).

N.Y. C.P.L.R. § 7112 provides:

> "A party to an action to recover a chattel may move, upon such notice as the court may direct, upon a showing that he lacks knowledge of the location of the chattel or a part thereof, for an order to examine any person for the purpose of obtaining information with reference to such location. The order may be granted before or after service of summons and complaint, or anytime before or after final judgment, and may also restrain the adverse party from acting in violation of whatever rights the moving party may have in the chattel, upon the execution of a reasonable undertaking, with sufficient sureties, to reimburse the adverse party for all damages wrongfully caused by such restraint."

Accordingly, the branch of plaintiff's motion seeking leave to depose Fortich to ascertain the location of the Collateral is granted. The deposition of Fortich shall be held on a date mutually agreeable to the parties **on or before January 27, 2010.**

---

[8] Notably, defendants also fail to counter this contention in their improper sur-reply.

16

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for an order of seizure and to depose Fortich is granted. Plaintiff shall submit a proposed order of seizure in accordance with Section 7102(d) **within five (5) days** from the date of Fortich's deposition. The restraint imposed by this Court's November 18, 2009 order shall remain in effect for **ten (10) days** following Fortich's deposition or until an order of seizure is entered, whichever is earlier. All further pretrial matters, other than the entry of the order of seizure, are referred to Magistrate Judge Arlene R. Lindsay for all purposes.

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: January 12, 2010
Central Islip, New York